JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| INLAND EMPIRE WATERKEEPER, a program of Orange County Coastkeeper; and ORANGE COUNTY COASTKEEPER, a California nonprofit public benefit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN MADE PLASTICS, INC., a California stock corporation; and SVS PROPERTY MANAGEMENT LLC, a California limited liability company,<br><br>Defendants. | Case No. 8:26-cv-00539-MRA-(KESx)<br><br>**CONSENT DECREE** |

**WHEREAS**, Orange County Coastkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Costa Mesa, California;

**WHEREAS**, Inland Empire Waterkeeper is a program of Orange County Coastkeeper (collectively, "Waterkeeper");

**WHEREAS**, Inland Empire Waterkeeper's mission is to promote watershed resilience in the Upper Santa Ana River Watershed, which it does through advocacy, education, research, restoration, and enforcement.

**WHEREAS**, American Made Plastics, Inc ("AMP") operates a facility at 945 East Church Street, Riverside, CA 92507 (the "Facility");

**WHEREAS**, SVS Property Management owns the land upon which the Facility operates;

**WHEREAS**, AMP is a manufacturing facility that creates a broad range plastic products including plastic kitchen and household products and injection and blow-molded houseware products for retail markets;

**WHEREAS**, AMP is categorized under Standard Industrial Classification ("SIC") Code 3089, Plastic Products, not elsewhere classified and SIC Code 3089, Plastic Bottles;

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, et seq. ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, on January 5, 2026, Waterkeeper alleges that it sent a notice of intent to file suit ("60-Day Notice") to AMP, SVS Property Management, their

registered agents for service of process, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director of the Regional Water Quality Control Board, Santa Ana Region ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ at the Facility;

**WHEREAS**, on March 9, 2026, Waterkeeper filed a complaint against AMP and SVS Property Management in the Central District of California, Civil Case No. 8:26-cv-00539-JDE (the "Complaint");

**WHEREAS**, Plaintiffs' Complaint alleges violations of the General Permit and the Clean Water Act for AMP's discharges of pollutants into storm drains and surface waters, which discharges to the Riverside Canal before discharging to Santa Ana River, both waters of the United States, which discharges into the Pacific Ocean (collectively, the "Receiving Waters");

**WHEREAS**, Waterkeeper, Coastkeeper, AMP, and SVS Property Management (together, the "Settling Parties" or "Parties" and individually, "Party") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice without further proceedings.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2. Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which

the alleged violations are taking place is located within this District.

3. For purposes of this Consent Decree, the parties stipulate that the Complaint alleges a claim upon which relief may be granted against AMP pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4. For purposes of this Consent Decree, the parties stipulate that Waterkeeper has standing to bring this action.

5. The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term of this Consent Decree.

## I. OBJECTIVES

6. It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by Waterkeeper in its Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7. In light of these objectives and as set forth fully below, Defendants agree to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II. AGENCY REVIEW AND CONSENT DECREE TERM

### A. AGENCY REVIEW OF CONSENT DECREE

8. Agency Review. Waterkeeper shall submit this Consent Decree to the United States Department of Justice and the EPA (together, the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier (the "Agency Review Period").

9. Court Notice. Waterkeeper shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10. Entry of Consent Decree. Promptly following the expiration of the Agency Review Period, Waterkeeper shall submit the Consent Decree to the Court for entry.

**B. DEFINITIONS**

11. Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, the following definitions apply:

a. "BMPs" means Best Management Practices.

b. "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

c. "Day" or "day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

d. "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

e. "Entry Date" means the day this Consent Decree is approved and entered by the Court.

f. "SWPPP" means a Storm Water Pollution Prevention Plan.

g. "Term" means the period between the Effective Date and the "Termination Date."

h. "Termination Date" means the latest of:

i. Three (3) years from the Effective Date, unless there is an ongoing, unresolved formal dispute regarding Defendants' compliance with this Consent Decree;

ii. If there is an ongoing, unresolved formal dispute regarding Defendants' compliance with this Consent Decree, the Consent Decree will terminate within seven (7) days following the earlier of: (1) notice by the Settling Party that invoked Dispute Resolution procedure that the dispute has been fully resolved, (2) an order of the Court resolving the dispute or (3) forty-five (45) days after the meet and confer described in Paragraph 28 if no motion is filed pursuant to Paragraph 29;

iii. Notwithstanding the above, if the Regional Board approves a Notice of Termination submitted for AMP pursuant to Section 2.C of the General Permit, the Termination Date shall be the later of: (1) the date of the Regional Board's Approval of the Notice of Termination for AMP, or (2) seven (7) calendar days from AMP's completion of all payments required by this Settlement Agreement.

## III. COMMITMENTS OF THE SETTLING PARTIES

### A. NO EXPOSURE CERTIFICATION

12. The Parties agree that the Facility will be brought into compliance with General Permit by achieving and maintaining NEC status.

13. Current Best Management Practices: Until AMP achieves the NEC status, AMP will continue maintaining the current BMPs described in AMP's SWPPP.

14. Attaining NEC Status: AMP shall implement the following actions within thirty (30) days of the Effective Date which intend to bring the site into NEC status:

a. Move the cooling tower and plumbing on the east side of the building to the west side.

b. Repair the asphalt and concrete, and seal cracks to prevent plastic pellets from collecting in cracks.

c. Use of separate indoor and outdoor forklifts to avoid drag out of pellets.

c. Complete the following housekeeping related activities:

i. Remove plastic pellets and general cleanup of outdoor areas around the Facility.

ii. Pressure wash asphalt and concrete with staining and properly collect and dispose of associated wastewater.

d. Any other activities that AMP determines is necessary to bring the Facility into NEC status.

15. AMP will take all necessary steps to ensure the Facility maintains NEC status.

16. AMP will provide a copy of the NEC application to Coastkeeper for review and comment. Coastkeeper shall have fourteen (14) days upon receipt to review and provide AMP with comments. Within fourteen (14) days of receiving Coastkeeper's comments, AMP shall consider each of Coastkeeper's recommended revisions if applicable and accept them or justify in writing why any comment is not incorporated. AMP shall then submit the NEC application to the State Water Resource Control Board and provide Coastkeeper with a copy of the application within seven (7) days of receipt.

**B. <u>COMPLIANCE WITH A NO EXPOSURE CERTIFICATION</u>**

17. Consistent with Section XVII of the General Permit, AMP shall:

a. Inspect and evaluate the Facility annually to determine that storm water exposed to industrial materials or equipment has not and will not be discharged to waters of the United States. Such inspections shall be recorded and kept until the Termination Date of this Consent Decree.

b. Submit and certify a NEC by October 1 of each Reporting Year, demonstrating that the Facility has been evaluated and that none of the Industrial Materials or Activities are, or will be in the foreseeable future, exposed to precipitation, as described in IGP Section XVII Subsection C, or apply for NOI coverage.

c. Maintain vehicles owned or leased by AMP used in material handling and annually inspect such vehicles.

d. Register for NOI coverage at least seven (7) days before anticipated exposure if circumstances change and Industrial Materials and Activities become exposed to rain and/or runoff.

18. If AMP registers for and/or does not obtain NEC coverage, either by choice or because NEC coverage is denied, AMP reserves the right to respond to the Regional Board and request reconsideration to the denial of the NEC within ten (10) business days. If the Regional Board has not changed its decision on the NEC status within thirty (30) business days of AMP's request to reconsider the denial of the NEC, AMP does not request reconsideration of the denial of the NEC within ten (10) business days, or AMP chooses not to obtain NEC coverage, the Parties agree to meet and confer within thirty (30) days to reopen and modify this Consent Decree.

19. Failure to comply with Paragraphs 17 and 18 above shall result in the trigger of Paragraph 26.

### C. Maintaining Records and Record Requests

20. AMP shall maintain records, which may include photographs, to document compliance with all terms of this Consent Decree, including, but not limited to Paragraph 17. Waterkeeper can request a copy of these records in writing, and AMP shall provide Waterkeeper with a copy of such requested records within fourteen (14) days of receipt of a written request from Waterkeeper for those records.

### D. Compliance Monitoring and Reporting

21. Site Inspections. Waterkeeper may conduct up to one (1) site inspection ("Site Inspection") per Reporting Year for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding AMP's compliance with this Consent Decree and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding one additional Site Inspection at Waterkeeper's request. Waterkeeper shall not unreasonably request, and AMP shall not unreasonably deny, the additional Site Inspection. Any Site Inspection shall occur during normal business hours, and Waterkeeper will endeavor to provide AMP with at least five (5) business days' notice but no less than forty-eight (48) hours' notice prior to any dry or anticipated wet weather inspection. For any Site Inspection requested to occur in wet weather, Waterkeeper shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 47. Waterkeeper shall be permitted to take photographs or video recordings during any Site Inspection and will provide any and all photographs or video recordings to AMP within five (5) business days of the inspection.

22. Document Provision. During the Term, AMP shall notify and submit documents to Waterkeeper as follows:

a. AMP shall copy Waterkeeper on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality;

b. Within seven (7) business days of receipt by AMP, AMP shall send to Waterkeeper any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by AMP from the Regional Board, the State Board, and/or any state or local agency, county, municipality. AMP shall email electronic copies of documents to Waterkeeper at the relevant notice address contained below.

23. Compliance Monitoring. Defendants agree to partially defray costs associated with Waterkeeper's monitoring of AMP's compliance with this Consent Decree Twenty-Five Thousand Dollars ($25,000) until the Termination Date. In the event that that this Consent Decree extends beyond the Termination Date, Defendants shall reimburse Waterkeeper an additional Fifteen Thousand Dollars ($15,000) per year that the Consent Decree remains in effect. Payment shall be made within thirty (30) days of the Entry Date, and on the anniversary of the Entry Date should the term extend beyond three (3) years, as applicable. The payment shall be made via check, made payable to: "Orange County Coastkeeper" via certified mail, return receipt requested to Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

**E. <u>Environmental Mitigation, Litigation Fees and Costs, Stipulated Penalties, and Interest</u>**

24. <u>Environmental Mitigation Project</u>: To fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in and around the San Jacinto River, AMP agrees to make a payment totaling Thirty-Five Thousand Dollars ($35,000.00) to Rivers and Lands Conservancy made within thirty (30) days of the Entry Date, payable to Rivers and Lands Conservancy and sent via overnight mail to 6876 Indiana Avenue, Suite J-2, Riverside, CA 92506. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

25. <u>Waterkeeper's Fees and Costs</u>: AMP agrees to pay a total of Seventy Thousand Dollars ($70,000.00) to Waterkeeper to reimburse Waterkeeper for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Entry Date. The payment shall be made payable to Orange County Coastkeeper and delivered by certified mail or overnight carrier to: Orange County Coastkeeper, 3151 Airway Ave., Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

26. <u>Stipulated Payment</u>. In the event that AMP fails to submit to Waterkeeper any payment, document, report, or communication required by this Consent Decree, Waterkeeper shall provide written notice to AMP of such missed deadline. AMP shall have seven (7) business days from receipt of such notice to respond to Waterkeeper, and if necessary, cure such delinquency. If the Facility fails to respond and, if necessary, cure such alleged delinquency within seven (7) business days of receipt of Waterkeeper's notice, then AMP shall pay a stipulated payment of

Seventy-Five Dollars ($75) per day. Such stipulated payments shall be made by check payable to: Rivers and Lands Conservancy, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 24. Payment shall be sent via overnight mail to Rivers and Lands Conservancy, 6876 Indiana Avenue, Suite J-2, Riverside, CA 92506. AMP agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

## IV. DISPUTE RESOLUTION

27. This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

28. Meet and Confer. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the notice.

29. Conference. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in Paragraph 28 above, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion. If the parties do not wish to request a conference with a magistrate, they may request a settlement conference.

30. In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant

to the provisions set forth in California Civil Code §1717, and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V. MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

31. Waterkeeper's Waiver and Release of Defendants. In consideration of the above, upon the Effective Date of this Consent Decree, Waterkeeper, on its own behalf and on behalf of its officers and directors, releases AMP and SVS Property Management, their officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

32. Defendants' Waiver and Release of Waterkeeper. In consideration of the above, upon the Effective Date of this Consent Decree, AMP and SVS Property Management, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, releases Waterkeeper, its officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

## VI. MISCELLANEOUS PROVISIONS

33. No Admission of Liability. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. AMP maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

34. Counterparts. This Consent Decree may be executed in any number of

counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

35. Authority. The undersigned representatives for Waterkeeper and AMP each certify that s/he is fully authorized by the Party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

36. Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

37. Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

38. Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

39. Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

40. Choice of Law. The laws of the United States shall govern this Consent Decree.

41. Diligence: AMP shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

42. Effect of Consent Decree: Compliance with this Consent Decree does not mean that AMP is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

43. Negotiated Settlement. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

44. Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

45. Assignment. Subject only to the express conditions contained in this Consent Decree, all the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Settling Parties, and their successors and assigns. In the event that AMP's transferee or assign ("Assignee") will continue industrial operations at the Facility, AMP shall notify Waterkeeper ten (10) days in advance of the proposed transfer or assignment ("the Assignment Notice") and within ten (10) days following the Assignment Notice, AMP will provide Waterkeeper with a written assignment and assumption duly executed by the Facility and the Assignee assigning AMP's obligations under this Consent Decree to the Assignee.

46. Force Majeure. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force

Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

47. Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| If to Waterkeeper: | If to AMP: |
| --- | --- |
| Davina Shoumer<br>davina@coastkeeper.org<br>Orange County Coastkeeper<br>3151 Airway Avenue, Suite F-110<br>Costa Mesa, CA 92626<br>Phone: (714) 850-1965 | Moe Vazin<br>moevazin@me.com<br>American Made Plastics Corporation<br>945 E. Church St.<br>Riverside, CA 92507 |
| With copies to:<br>Sarah Spinuzzi<br>sarah@coastkeeper.org<br>Orange County Coastkeeper<br>3151 Airway Avenue, Suite F-110<br>Costa Mesa, CA 92626 | With copies to:<br>Shawn Hagerty<br>shawn.hagerty@bbklaw.com<br>anya.kwan@bbklaw.com<br>BEST BEST & KRIEGER |

Phone: (714) 850-1965

655 West Broadway, Suite 1500
San Diego, California 92101
Phone: (619) 525-1300

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

48. If for any reason the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between Waterkeeper and AMP.

APPROVED AS TO CONTENT

Dated: 8/14/2026

By: Garry Brown
Garry Brown
Executive Director
Orange County Coastkeeper

Dated: 8-14-26

By: Moe Vazin
Moe Vazin
American Made Plastics, Inc.
SVS Property Management, LLC

APPROVED AS TO FORM

Dated: 8/14/2026

By: Davina Shoumer
Davina Shoumer
Attorney for Orange County Coastkeeper

Dated: 8/14/2026

By: Anya Kwan
Shawn Hagerty
Anya Kwan
Attorney for American Made Plastics, Inc.

**IT IS SO ORDERED.**

**FINAL JUDGMENT**

Dated: September 30, 2026

Mónica R. Al
**HON. MONICA RAMIREZ ALMADANI**
**UNITED STATES DISTRICT JUDGE**



Best Best & Krieger LLP